EDOK - Application for Search Warrant (Revised 5/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

FILED
APR 29 2016
PATRICK KEANEY
Clerk, U.S. District Court
By _____
Deputy Clerk

| | |
|---|---|
| In the Matter of the Search of Information associated with federalcourtsystemokc4916573@gmail.com that is stored at premises controlled by Google Inc. | Case No. 16-MJ-027 -SPS  |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the <u>NORTHERN</u> District of <u>CALIFORNIA</u> *(identify the person or describe property to be searched and give its location)*:

    SEE ATTACHMENT "A"

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

    SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

    ☒ evidence of a crime;
    ☐ contraband, fruits of crime, or other items illegally possessed;
    ☐ property designed for use, intended for use, or used in committing a crime;
    ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of Title 18, United States Code, Section(s) ___, and the application is based on these facts:

    ☒ Continued on the attached sheet.
    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
ADAM REYNOLDS
Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my presence.

Date: April 29, 2016

_____
Judge's signature

City and state: Muskogee, Oklahoma

STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the following Google email account: **federalcourtsystemokc4916573@gmail.com** that is stored at premises owned, maintained, controlled, or operated by Google Inc., 1600 Amphitheater Parkway, Mountainview, California 94043

## ATTACHMENT B

### Particular Things to be Seized

I.  **Information to be disclosed by Google Inc. (the "Provider")**

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b. All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c. The types of service utilized;

d. All records or other information stored at any time by an individual using the account, including address books, contact and buddy lists, calendar data, pictures, and files;

e. All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

## II. Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 1343 – Wire Fraud, those violations involving Craig GREENLEEE and occurring after January 2011, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

(a) Communications between C. GREENLEE and Gale Gladd; communications between C. GREENLEE and Clifford McElheney; and steps taken in furtherance of the scheme to defraud Gale Gladd and Clifford McElheney;

(b) Evidence indicating how and when the email account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(c) Evidence indicating the email account owner's state of mind as it relates to the crime under investigation; and

(d) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Adam Reynolds, hereinafter referred to as "Affiant," being duly sworn, do hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with particular Gmail email accounts that are stored at premises owned, maintained, controlled, or operated by Google Inc. (hereinafter "Google), an internet search and email company headquartered at 1600 Amphitheater Parkway, Mountainview, California 94043. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2. Affiant is a Special Agent with the Federal Bureau of Investigation (FBI), and has been so employed for approximately six (6) and a half years. Affiant is currently assigned to the Oklahoma City Division, Muskogee Resident Agency of the FBI, and is authorized and responsible for conducting investigations of numerous criminal violations that fall within the FBI's jurisdiction. Through training and experience, Affiant is familiar with such investigations and the execution of search warrants associated with these investigations.

3. The information in this affidavit was obtained by Affiant personally, through the assistance of other law enforcement agents and agencies, including their reports, and through

other sources specifically named in this affidavit. Based upon your Affiant's knowledge, training, and experience along with the experience of other law enforcement personnel with whom Affiant has consulted on this issue, your Affiant knows that individuals who commit wire fraud keep financial records, receipts, journals, or ledgers on their online accounts, so there is probable cause to believe that financial records and other evidence of the wire fraud scheme are present in Craig GREENLEE (C. GREENLEE)'s Google Accounts. This affidavit is being submitted for the limited purpose of securing a search warrant; therefore, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence of violations of the aforementioned federal criminal statute exists. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## JURISDICTION

4. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. §2711(3)(A)(i), 18 U.S.C. §§2703(a), (b)(1)(A) and (c)(1)(A). Specifically, the Court is "a district court of the United States (including a magistrate judge of such court)…that had jurisdiction over the case being investigated." 18 U.S.C. §2711(3)(A)(i).

## PROBABLE CAUSE

5. On April 11, 2016, Tasha Carey contacted the Muskogee FBI office regarding C. GREENLEE's activities to obtain money from Gale Gladd (hereinafter as G. Gladd) and Clifford McElheney (hereinafter as C. McElheney) claiming a farm tractor and trailer were impounded and C. GREENLEE needed money to get the tractor and trailer out of impound. C. GREENLEE

requested $600.00 from G. Gladd to pay impound fees associated with the farm tractor and trailer. Tasha Carey advised G. Gladd has provided several hundred thousand dollars to C. GREENLEE to get the tractor and trailer out of impound and settle a $12 million federal lawsuit involving the tractor and trailer being held by an insurance company.

6. On April 11, 2016, G. Gladd was interviewed and advised she was approached by C. GREENLEE at the Muscogee Creek casino, Eufaula, Oklahoma approximately four years ago. C. GREENLEE stated he needed assistance getting a farm tractor and trailer out of impound and needed $600.00 for the fees associated with the tractor and trailer, which G. Gladd agreed to pay to assist C. GREENLEE. C. GREENLEE advised if G. Gladd assisted with getting the farm tractor out of impound he would give her the farm tractor and trailer towing the tractor. C. GREENLEE then approached G. Gladd again to obtain more money to pay for insurance fees and impound fees associated with the farm tractor and trailer, which G. Gladd provided more money to get the tractor and trailer back. C. GREENLEE also approached G. Gladd to pay for attorney's fees associated with the farm tractor being held in impound. G. Gladd advised she never received the farm tractor or trailer. G. Gladd was then approached by C. GREENLEE to pay fees associated with obtaining $12 million held by the Federal Government in a pending lawsuit related to the farm tractor. G. Gladd received text messages, telephone calls, and emails from several individuals claiming to be the chairman of the board, Harold McAlester, overseeing the distribution of the money, a federal judge located in New York by the name of Richard Sullivan, and C. GREENLEE in Eufaula. G. Gladd advised she has provided over $100,000.00 to C. GREENLEE to pay for fees associated with the farm tractor and money being held by the Federal Government in a pending lawsuit. G. Gladd typically provides cash to Greenlee in person and G. Gladd believes Greenlee is sending the money to other individuals via Western

Union card number xxxx-xxxxxxxx4073, expiration date 9/2019, pin number 0822, security code 774, since C. GREENLEE requested G. Gladd to put money on the Western Union card in the past to pay for the fees associated with obtaining the money. C. GREENLEE told G. Gladd he was not supposed to tell anyone about the money because the federal judge put a gag order on the case, but if she assisted with paying the fees he would share the money with her. C. GREENLEE also told G. Gladd not to tell anyone about the money being held by the federal government or he would lose the money and be arrested. G. Gladd has been given until Thursday, April 14, 2016, to come up with $3800.00 to pay for insurance fees associated with the $12 million being held in Muskogee, Oklahoma, according to C. GREENLEE. G. Gladd was able to postpone the payment until a later date. G. Gladd has been receiving emails from **federalcourtsystemokc4916573@gmail.com**, which is not an official email address for the Western District of Oklahoma District court, Oklahoma City, Oklahoma. Based on my experience Google email accounts using @gmail.com that receive messages in Oklahoma must travel interstate commerce. C. GREENLEE also used **craiggreenlee24@gmail.com** to request money for the pending lawsuit. G. Gladd also has been receiving telephone calls from C. GREENLEE from an unlisted telephone number, which appears as a "NO ID" on her cellular telephone number. G. Gladd advised she has also received telephone calls from telephone number (512) 298-8836 regarding obtaining money. C. GREENLEE advised to G. Gladd the case has a gag order and if he discusses the pending case he will lose the money and face jail time, so Gale can't tell anyone about the lawsuit or money she gave C. GREENLEE. C. GREENLEE claimed the lawsuit was being handled by Chairman Howard McAlester, C. GREENLEE also obtained money from C. McElheney to help pay money for the fees associated with the $12 million lawsuit and he would get his money back and receive some of the money

from the lawsuit. C. McElheney gave C. GREENLEE several thousand dollars to pay the fees for the lawsuit. C. GREENLEE advised the $12 million is being held in Muskogee, Oklahoma, at the U.S. federal court house and if they pay the $1,600.00 per day insurance payment for the weekend they will deliver the money to Eufaula the following day.

7. On April 19, 2016, G. Gladd advised she has been to C. GREENLEE's residence approximately 35 times to talk about the $12 million lawsuit involving the farm tractor and trailer and C. GREENLEE obtaining money for the fees associated with the lawsuit involving the farm tractor and trailer. G. Gladd has delivered cash to C. GREENLEE at his residence on 25 occasions and the amount ranged between $800.00 and $4,500.00 each visit to C. GREENLEE's residence. G. Gladd last visited C. GREENLEE at his residence approximately ten days ago to give him $2,200.00 to pay for the fees associated with the $12 million lawsuit involving the farm tractor and trailer. G. Gladd was shown a picture of 526 West Foley Street, Eufaula, Oklahoma 74432 and G. Gladd verified the photograph of 526 West Foley Street, Eufaula, Oklahoma 74432 as the residence for C. GREENLEE.

8. On April 13, 2016, C. McElheney was interviewed and advised he was approached at Burdine Farm Supply by C. GREENLEE approximately four years ago to invest in a $12 million pending lawsuit involving a farm tractor and trailer several years ago and C. GREENLEE promised give C. McElheney $100,000.00 if he would help pay the fees associated with the lawsuit. C. McElheney advised G. Gladd was present when C. GREENLEE approached him to pay the fees associated with the lawsuit. C. McElheney had talked to G. Gladd in the past about the money she had provided to C. GREENLEE and was aware she was giving money to C. GREENLEE to pay for the fees associated with the lawsuit. C. McElheney gave C. GREENLEE several thousand dollars, total amount unknown, to pay the fees associated with the lawsuit. C.

McElheney advised he will review his records and determine the amount provided the C. GREENLEE. C. McElheney provided the money to C. GREENLEE in person and C. McElheney has even approached C. GREENLEE at his residence in Eufaula to discuss the pending lawsuit. C. McElheney took a $3,500 loan from the Bank of Eufaula with a repayment on the loan in one year. C. McElheney paid the interest and the loan and refinanced the loan at the Bank of Eufaula. C. McElheney paid C. GREENLEE $3,500 cash from the loan obtained at the Bank of Eufaula, $2,500 cash borrowed from his father Sam McElheney, and $100 in cash on several occasions. C. GREENLEE would approach C. McElheney for more money and when C. McElheney had cash he would provide it to him with the guarantee when the lawsuit ended C. GREENLEE would pay C. McElheney $100,000.00 from the settlement.

9. On 4/13/2016, G. Gladd and C. McElheney conducted a consensually monitored telephone call to C. GREENLEE, telephone number listed as "No ID." G. Gladd sent a text message to email address **craiggreenlee24@gmail.com** to advise she was available to talk to C. GREENLEE about the pending lawsuit. C. GREENLEE called G. Gladd, shortly after the text message was sent with a telephone number listed as "No ID" and the telephone call was recorded for investigative purposes. During the consensual telephone call an FBI Special Agent conducted physical surveillance on C. GREENLEE at 526 West Foley Street, Eufaula, Oklahoma 74432 and observed a Caucasian male, wearing a black shirt, and blue jeans matching the physical description of C. GREENLEE standing on the driver's side of a white Dodge Ram pickup parked in the backyard talking on a cellular telephone. During the consensually recorded telephone call C. GREENLEE advised they have $600,000.00 to $700,000.00 in the lawsuit and the bank will not put insurance on the money because it is too much money, so C. GREENLEE is the one having to put insurance on the money because if something happens to the money the

bank will only cover $250,000.00. C. GREENLEE advised this all started with a tractor and some tires and a boy trying to get home to Texas, when they impounded the tractor and it ballooned to the lawsuit. C. GREENLEE advised he had legal documentation for the tractor, but he didn't have the bill of sale and they claimed the tractor was never C. GREENLEE's tractor, so he had to sue. C. GREENLEE advised there is interest on the money because the money shipped to Muskogee for C. GREENLEE. C. GREENLEE was asked what happened to the tractor and C. GREENLEE stated "I have no clue." C. GREENLEE advised G. Gladd has given C. GREENLEE $15,000.00 to $20,000.00 in the last month.

10. On April 19, 2016, Muscogee Creek Nation provided gaming records for C. GREENLEE. C. GREENLEE was issued players card 59200574 at Creek Nation Casino, Checotah, Oklahoma and had total payments of $664,839.00 from June 15, 2014 to April 8, 2016. C. GREENLEE was issued players card 3900051602 at Creek Nation Casino, Muskogee, Oklahoma and had total payments of $54,064.80 from July 7, 2014 to March 29, 2016. C. GREENLEE was issued players card 3700003104 and 3700004827 at Creek Nation Casino, Eufaula, Oklahoma and had total payments of $871,414.00 from June 2, 2014 to April 11, 2016.

11. An internet search was conducted for "Federal Judge Richard Sullivan," which resulted in identifying United States District Judge Richard J. Sullivan for the Southern District of New York. An internet search for "Chairman Howard McAlester," resulted in negative records. On April 19, 2016, Affiant contacted The Eastern District of Oklahoma Court Clerk Pat Keaney and Western District of Oklahoma Court Clerk Carmelita Shinn regarding the alleged $12 million in cash being held for C. GREENLEE. Keaney advised the federal courthouse does not have $12 million in cash being held for payment. On April 19, 2016, Affiant contacted United States District Court Southern District of New York Law Clerk Sarah Kushner for

District Judge Richard J. Sullivan and verified Judge Sullivan does not have a case involving C. GREENLEE or a $12 million settlement to be paid in Oklahoma.

12.     On April 15, 2016, a 2703(f) Preservation Request for the Gmail account **craiggreenlee24@gmail.com** was sent electronically to Google. The request asked for data related to the email account be preserved.

13.     On April 20, 2016, United States Magistrate Judge Steven P. Shreder signed a Federal Search Warrant for 526 West Foley Street, Eufaula, OK 74432.

14.     On April 22, 2016, a Federal Search Warrant was executed at 526 West Foley Street, Eufaula, OK 74432. During the execution of the search warrant a Samsung Galaxy Note 5, SN: R38G903KC5R was seized.

15.     On April 25, 2016, FBI Special Agent Adam Reynolds conducted a preview of the Samsung Galaxy Note 5, SN: R38G903KC5R mentioned above. SA Reynolds found the Gmail email application installed on the cell phone and the following Gmail accounts were configured on the phone:

- greenleecraig24@gmail.com,
- **craiggreenlee24@gmail.com**,
- box25modeling@gmail.com,
- stacysbc34@gmail.comand, and
- **federalcourtsystemokc4916573@gmail.com**.

16.     In general, an email that is sent to a Google subscriber is stored in the subscriber's "mail box" on Google's servers until the subscriber deletes the email. If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the

subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time.

## BACKGROUND CONCERNING EMAIL

17.  In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public. Google allows subscribers to obtain email accounts at the domain name gmail.com, like the email account[s] listed in Attachment A. Subscribers obtain an account by registering with Google. During the registration process, Google asks subscribers to provide basic personal information. Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

18.  A Google subscriber can also store with the provider files in addition to emails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to emails), and other files, on servers maintained and/or owned by Google. In my training and experience, evidence of who was using an email account may be found in address books, contact or buddy lists, email in the account, and attachments to emails, including pictures and files.

19.  In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of

payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

20. In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

21. In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute

evidence of the crimes under investigation because the information can be used to identify the account's user or users.

22. As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email). Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or

consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

23. SA Reynolds believes there is probable cause that the following Gmail accounts **craiggreenlee24@gmail.com** and **federalcourtsystemokc4916573@gmail.com**, contain electronic evidence of a scheme to defraud victims for the monetary gain of the subject.

### INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

24. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Google to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

25. The items that is subject of the search is the email accounts **craiggreenlee24@gmail.com** and **federalcourtsystemokc4916573@gmail.com** controlled or operated by the internet search and email company Google, 1600 Amphitheater Parkway, Mountainview, California 94043. As set forth herein, there is probable cause to believe that on the computer systems of Google, Inc. there is evidence of violation(s) of 18 U.S.C. §§ 1343. Specifically, the Google account mentioned above may contain electronic evidence of a scheme to defraud victims for the monetary gain of the subject.

### SEARCH PROCEDURE

26. In order to ensure that your Affiant searches only those accounts and/or files described in this affidavit and application for search warrant, this affidavit and application for search warrant seek authorization to permit employees of Google to assist agents in the execution

of this warrant. To further ensure that your Affiant searches only those accounts and/or files described in this affidavit, the following procedures will be implemented:

    a.    In light of Google's corporate policy and due to the technical nature of this search, it is your Affiant's intention to fax the search warrant to Google. and request that they actually conduct the search.

    b.    In order to minimize any disruption of computer service to innocent third parties, your Affiant shall permit Google, as custodian of the computer files described in this affidavit, to locate the files, copy them onto removable electronic storage media or print them out as paper copies, and deliver the copies to your Affiant who need not be present during this process. Google employees will create an exact duplicate of the accounts and files described in this affidavit.

    c.    Google employees will provide the exact duplicate in electronic form of the accounts and files described in this affidavit and all information stored in those accounts and files to your Affiant.

    d.    Your Affiant and other agents of the Oklahoma City Division of the FBI, or other law enforcement personnel, will thereafter review the information for evidence of violations of 18 U.S.C. §§1343.

    e.    Pursuant to 18 U.S.C. §2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## CONCLUSION

27.    In light of the foregoing, Affiant believes that there is probable cause to conduct a search of the Google email accounts, **craiggreenlee24@gmail.com** and **federalcourtsystemokc4916573@gmail.com** which may contain electronic evidence of a

scheme to defraud victims for the monetary gain of the subject which were described in this affidavit.

_____
Special Agent Adam Reynolds
Federal Bureau of Investigation

Sworn and subscribed before me this the 29th day of April, 2016.

_____
STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE